Good morning. I'm David Long from Eugene, Oregon. It's a privilege to be here. I represent Vincent Burroughs. You can speak into the microphone, sir. I represent Vincent Burroughs, who received a call from a revenue agent for the internal... Why don't you just talk to the right end of the... who received contact from the internal revenue service that he was going to be audited. It was a female agent. She indicated, Don't I know you? I know who you are. You're lucky that I'm assigned to the case. Over the course of a period of time, she texted him, sent him flirtatious texts and photos of herself, indicated that if he did what she wanted, he would get what he needed, that she could impose a 40% penalty or she could impose nothing. She ended up going to his house after hours, 9 o'clock at night, his house, not business premises. They had sex. After that happened, she contacted her supervisor and indicated that she thought she might have a conflict. Counsel? I thought there was a conflict. I'm sorry? I thought there was a conflict. Yeah, she thought there was a conflict afterwards, but she did not make that communication to her supervisor until after it happened. So Mr. Burroughs filed a lawsuit seeking redress from the United States of America for the conduct of this agent, and the government filed a motion to dismiss on jurisdiction grounds. Let me just jump in right there because I think that's a great segue. In your complaint, and I think we've all read it here, are you alleging an intentional tort or not? Both. We allege both negligent, wrongful, and intentional tort. Where do you allege the intentional stuff? I read your complaint. I've read it 40 times here. I read in paragraph 1, plaintiff brings this action against the United States for negligence. And other wrongful conduct. It doesn't say anything about other wrongful conduct. I read in here, I go back here, for relief against the defendant, the United States, for negligence. This is the stuff you have not appealed. I don't find any wrongful conduct alleged. I don't find any intentional act alleged. I'm trying to figure out why we're even talking about that. Well, the court actually ruled that because it was an intentional tort, it was excluded. Oh, no. Which court did? The district court didn't. The district court said it isn't intentional. The district court said, one, that you want me to read the district court's note to you? The district court said, and I quote, it's not reasonable to conclude that the alleged conduct is utilizing the authority to pursue a relationship where the government was motivated in any way to serve or was a time set intentional. Such a theory is not available to plaintiffs in this case, as such a theory is only applicable to intentional torts. And further down, it says in this case, plaintiff alleges negligence on that same page. That's page four of the order. That's page 50 of the transcript. So I'm still, I'm exactly where my colleague is. You've only alleged negligence. The district court said that the conduct occurred outside the course and scope of your employment. That means the reason they did is because if you're only alleging negligence, which gets you in under the FTCA, negligence, it has to be while acting within the scope of his office or employment. So then the district court focused in the scope of his office or employment. And then they gave the doctrine in Oregon of the scope of his office or employment as three different things. And then you tried to argue that it was an intentional or that you tried to argue that the theory we should look at was that out of menace. But menace was for an intentional tort, and therefore your theory was not appropriate for the case in front of us. That's what the district court said. The complaint alleges a series of facts. Well, I understand it alleges a series of facts, but as I read to you, I tried to figure out, are you alleging them in negligence because that's all you ever say? You start right out. This action is for negligence. The complaint says that the allegations support both negligence, wrongful, and intentional wrongdoing. All right, so counsel, let's say we read the complaint the way that Judge Smith is suggesting, and frankly, that's how I read it to you, that I do not read an intentional tort being alleged. Normally when you allege an intentional tort, you say negligence and extortion or whatever it might be. If we were to agree to the district court correctly dismiss the complaint, there's the issue of leave to amend, and you have raised that. That's correct. How would you amend the complaint to deal with the, you know, two different, I can never, the syllabus and the sharp, I'm never going to say that Greek thing, but you're on a rock and a hard place. I've got to steer through both of them here. What would the complaint say if you were given another shot? The complaint would say that it would allege an intentional tort of infliction of emotional distress, invasion of privacy in order to sexually harass and abuse the taxpayer, and the court actually addressed that to the district court and said, well, you can't really do that because of the intentional tort exception to the federal, the FTCA. And then, but the court recognized that an intentional tort, if there is a time lag, if the conduct was the direct outgrowth of conduct within the court's scope of employment, that there would be a claim. But then the court said, but sex is intentional, so the intentional tort exception applies, and therefore you lose. But that's wrong because there is no per se intentional tort exception. Rather, there's an exception for certain specified intentional torts. So you would say, what you're telling us is that you could allege a tort that would be intentional yet not on that list in 2688. That's correct. Now, here's my other question for you. That if, as I read the faring case and the whole line of cases, there's the drug case and all these cases, these cases seem to focus on the fact that there was a time during normal operations where this relationship was developed. That's correct. Now, as I read this complaint, the factual allegations, paragraph 6 through 19, I don't see anything in there indicating whether this began during regular business hours or if this was just, my words, a really crazy lady at night at home looking at Facebook on the Internet and texting your client. So what could you add to this complaint so I would feel more comfortable that it really was going on, at least the beginning of this was going on at the IRS? First of all, the complaint does allege that in the course and scope of her employment, she contacted him. She did these texts and communications with him. That's how she. Where does it say that, that it was in the course of employment that the contact was? I may have missed that. I have a little search function on this thing, so I'll type in scope. Well, the best I have is 9. On 9, there was a telephone call, an advisement that she was an agent and he was subject on it. He was lucky. Everything else that I read, 10, 11, 12, 13, 14, 15, 16, right through to the end, all is after work. And there is, in paragraph 20, there is one sentence that says, defendant in her interactions with plaintiff was acting within the course and scope of her employment. But there are no, it's more like a legal statement. There are no facts alleged to support that legal statement. I guess if we were allowed to amend, that could happen. Okay. But paragraph 3 does state at all times, defendant Abramson was an internal revenue service agent employed by the United States of America and acting under the color of her authority and within the scope of her actual or apparent authority. But that really doesn't address my good colleague's question, which is, occurs within the time and space limits of her employment. Well, there's, like, paragraph, I mean, I'm an employee of the government. But after 5 o'clock, I'm allowed to go out and do whatever I want to do. All right, I am the government. But I'm allowed to go out and do what I want to do. I mean, I'm just trying to say, you've got to hit the case substantially within the time and space limits authorized by the employment. And that's why the good judge's questions are pretty important to me, too. Well, when she, like you mentioned paragraph 9, in August of 2011, as an agent, she's contacting me by telephone, advising me she's an agent, and they subject to an audit. That is within the scope and course of her authority. Well, I understand, but that's hardly outside of what she can say. I mean, I'm trying to figure out where do we get on past negligence. Just everybody's going to get a contact. I'm an agent, and you're subject to the audit. I'm even going to get that. Well, you're going to say that is the space limits you're talking about, just that first contact? Well, no, because, first of all, at all times, she's in the scope. And then in paragraph 11, in September, on or about September, she comes to his home. That is during the time of the day when she's working. That was at night. That's correct, but that's how she knows how to get a hold of him. It's an outgrowth of her employment for the government. Is there a client here today? Yes, sir. So we would request an opportunity to amend to address any deficiencies that you've identified here today. And you can specifically identify that these communications occurred during a nine-to-five time slot or that they occurred when she was in her office or something? Yes, some of those communications occurred during office hours when she was working. Did she say, give me what I want, I'll give you what I want? That's right. She said, I can impose a 40% penalty or no penalty. You give me what I want, I'll give you what I need. And so that's work-related. That's within the scope of her employment. And when she goes to his house ostensibly to review papers, that's related to work. Is that what they call a frolic and detour? That's what they call a frolic and detour. And what case do you cite for the idea that the FTCA, even if it isn't negligence, would cover the wrongful acts you want to allege? Well, a couple of different things. One, the case of who pursues the United States of America, where immigration … That's in California. I don't have to consider that. Give me one other. I know what we were talking about. I know it's a Ninth Circuit case. I want to know what Oregon case says that what you're suggesting here would be a wrongful act covered under the FTCA. Whether there'd be a private action if the government was … What I'm trying to focus on is if you can't get in on negligence, the only other way to get you in is wrongful act. So what Oregon case would suggest that, or what case do you think is appropriate for me to look at to suggest that the FTCA was enacted in order to cover what you want to allege? Because what this says is, while acting within the scope of his office or employment under circumstances where the U.S., if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Whether a private cause of action exists for intentional affliction of emotional distress, a private cause of action exists for invasion of privacy. Those are cognizable under Oregon law. I'm unable at the top of my head to cite you a case, but those are legitimate. Those are the ones you're going to allege? Those are among the ones I'm going to allege. I would also actually allege assault, and I'll tell you why. Because even though there's the intentional exception for the so-called intentional exception, it doesn't apply under the terms of the statute because a revenue agent is an investigative officer. There's an exclusion from the intentional towards exception for the acts of investigative officer or a law officer, law enforcement officer. It's in the disjunctive. It is, counsel, but haven't, I mean, this complaint was filed a long time ago. This case was briefed before the district court. Wouldn't that be waived at this point? I think it's 2680B. Well, because the court dismissed with prejudice, we didn't get to amend. No, but did you ever allege before the dismissal in this case, in any of your briefing previously, that Ms. Abramson falls into this category, what's normally called the law enforcement exception? Did you ever brief that previously? Not brief, but the government brought it up, and the statute itself says it doesn't apply. But I'm asking, but you never made that argument in any of your oppositions to the motion to dismiss? I realized that argument when I read the statute before I came here. Okay, so it wasn't until preparing for this argument that that argument was raised? That's correct. Okay. I assume that the intentional tort applied until recently. Let me ask you another question, which concerned me. Did you ever go back to the district court and say, Judge, you made an error to dismiss this with prejudice? Well, I told them that. Not what you told them. I didn't find any motion. Well, I didn't find anything in the record which would suggest you went in and said, Judge, I ought to be able to amend my complaint to assert these good causes. Now, I appreciate you can make good causes in front of me, or at least you've suggested there are good causes. Did you ever say that to the district court? Only to the court's face. Only during argument? Only before it was dismissed. Did you say, I want to amend? Yes. In that hearing, I said, I want to amend. I said, don't dismiss it with prejudice, Judge. I'd like to amend. I guess I missed that. It's in there. But then he dismissed it with prejudice, and so I couldn't amend. I understand that. Well, I'm glad. Thank you. So I'll reserve the rest of my time if I've got any. We don't have any. This is a threat. May it please the Court, Sean Martin for the United States. The district court correctly dismissed this tort case on sovereign immunity grounds. As your honors were, I think, signaling your questioning of Mr. Moule, this complaint was quite plainly brought in negligence against the United States. Your honors brought up some specific citations to the complaint. I would also cite to paragraph 21 of the complaint, which specifies what exactly was supposedly negligent on the United States. There's no indication in the complaint whatsoever that there be any intentional torts. And as the district court recognized, your honors, the three-part course and scope test defeats the negligence allegations that Mr. Burroughs brought because the whole essence of this case, the sexual encounter, that act occurred well outside the time and space limits of the IRS revenue agent's employment. As the supplemental excerpt of Record 30 indicates, this is from Mr. Burroughs' brief, the sex was, quote, after hours, off employment premises, and not in respect to performance of official duties of the federal employee. The district court looked at that fact alone and concluded accurately that part one of the course and scope test was not meant just as a waiver of sovereign immunity. But what do we do with this prejudice? Well, it wasn't an abuse of discretion, your honor. This court has held repeatedly in the past that in the context of an FTCA case where there's a sovereign immunity problem and it's futile to correct it, dismiss it with prejudice. So then we have to determine here that it's futile, or do we send it back and say, you know, district court, it seems to us that he had this one complaint. You threw it out. Take him for his word. He said in front of you, I'd like to amend it, and you didn't give him a chance? I don't think it would serve a purpose to amend it to the district court, your honor. Let me explain why. That's what I want to know. Yeah. Mr. Burroughs' lawyer today, you know, for the first time, not to the district court, not his opening brief, identified two theories that he believes might be viable that should give him cause to be plead. One of them was that this is an assault and that that's not an enumerated exception because Ms. Abrahamson was a law enforcement officer. Now, that's not correct. The record before you, your honors, I believe it is the Wolfinger Declaration from the IRS, explains that revenue agent Abrahamson didn't have the authority or the job description to seize evidence, make arrests, draw a weapon. So under the Federal Tort Claims Act, she was not a law enforcement agent, and that exception to the exception for assault battery would not apply to create a viable assault claim against the United States in this instance. What about the intentional inflection in the court's discretion? Well, the problem with that is that, you know, this court looks to the essence of a claim, not the label. And, you know, I'm looking at page 27 of the appellant's brief. Ms. Abrahamson leveraged her power and authority as an auditor for her personal advantage for what she wanted out of Mr. Burroughs personally. Now, that makes it clear, I think the complaint also makes it clear, that this is a barred abusive process tort claim that is enumerated under Section 2680H. Under Oregon law, which was cited in the briefing, there's an abusive process when you have a legal procedure. I believe it was the Larson case from the Oregon Supreme Court where it was a credit bureau under a debt collection process and procedure. And the Oregon Supreme Court laid out the elements of an abusive process, a debt collection that was driven by a personal agenda, by willful acts, that didn't serve that process itself would be an abusive process. And here, the essence of this whole case is that Abrahamson abused her power, abused this, you know, important IRS process of auditing and the possible tax assessment for her personal purposes. And let me cite your honors also to supplemental excerpts of Record 32. This is Mr. Burroughs' counsel declaration. And he stated to the district judge that the flirtations and sexual relationship itself were not part of an attempt to audit or collect taxes. So, you know, even Mr. Burroughs' counsel concedes that this was really sort of a personally driven, you know, rogue effort by an employee. It had nothing to do with the United States being negligent or wrongful. The United States shouldn't be, you know, can't be held liable here, you know, given the essence of the claim, which is either a sexual assault and battery and or an abusive IRS audit and assessment procedure, your honor. This would be a great bar exam question, sir. Well, so let me take that out a little bit further for your honor. Well, counsel, let me ask you that. Do you want to take a quick break, Judge? Yeah, we'll take a quick break. We've been sitting here for two and a half, over two. So I think the question for you, counsel. Two and a half hours. The question for you, counsel, is that are you, how much more do you think you have? If you have a minute or two, I think maybe we can go on. But if not, if it's going to be another nine, ten minutes, I think we may need to take just a very brief break. You know, I think I'll just take another minute. Would that work, your honor? I'm happy to wait if you prefer. Go ahead. Take a minute. All right. I think just a final point about the IIED, if that worked. Sure. To go forward, it's not viable. I cited, your honors, to the Exit for Record 32, Mr. Burroughs' lawyer's declaration. But also, if you look at the three-part test, right, if you look at the three-part test, I think even if you have something, a sext or some sort of lascivious outreach during the time and space limits, I think you still have a very serious, special problem. How was Ms. Abrahamson, how is that anything that she's hired to do for the IRS? She's hired to do arm's-length tax audits in a professional manner, not to engage in this type of personal relationship building. And it's, you know, given the, I would say the concessions of the plaintiff, that those personal statements and those overtures didn't have anything to do with serving the IRS. So, unless your honors have further questions, thank you very much. I think it's the law school example. All right. Thank you very much, counsel. Thank you. I think it works. The complaint does say it's for negligence and wrongful conduct. Where? For example, in paragraph 24, the negligence and wrongful conduct of the United States. Well, I guess I'll read it because I thought, as counsel suggested, he pretty well outlined in paragraph 21 what you were going to do as to the negligence action and what encompassed it in 21. And in 22, you outlined what it was that was going to apply to the other claim you did not appeal. So, I'll look at it and see if I can go with what you've got to say. Very interesting case. You did a great job for your client. Thank you. You did too. All right. Well, recess until 9 o'clock tomorrow morning. And all cases are submitted. Thank you. Thank you.
judges: Pregerson, Smith, Owens